# IN THE COURT OF APPEALS OF IOWA

No. 17-0173
Filed June 7, 2017

IN THE INTEREST OF J.P.,
Minor Child,

J.D., Mother,
        Petitioner-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother appeals from the termination of her parental rights.  **AFFIRMED.**

Jessica Maffitt of Benzoni Law Office, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Charles K. Phillips, Assistant Attorney General, for appellee State.

John P. Jellineck of the Public Defender's Office, Des Moines, for minor child.

Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the termination of her parental rights.[1]  Because we find the State has made reasonable efforts to reunify the mother and child, and because there is clear and convincing evidence to support termination pursuant to Iowa Code section 232.116(1)(h) (2016), termination is in the child's best interests, and no permissive factor weighs against termination, we affirm the termination of the mother's parental rights.

**I. Background Facts and Proceedings.**

The child was born in September 2015 and came to the attention of the juvenile court on October 13, 2015, after the mother contacted the Iowa Department of Human Services (DHS) and reported that she was unable to care for the child because her mental-health, substance-abuse, and childhood-trauma issues were more than she could bear at that time.[2]  The mother (age thirty at the time of the termination hearing) has a significant history of trauma, mental-health disorders and substance abuse.  She has been diagnosed with seizure disorder, bipolar disorder, schizophrenia, posttraumatic stress disorder, anxiety, major depression disorder, split personality disorder, and mild mental retardation.  She has struggled with these mental-health concerns since she was fourteen years old.  The juvenile court entered a temporary removal order with the mother's

---

[1] The father's rights were also terminated.  He does not appeal.

[2] The mother has had numerous hospitalizations due to her mental-health conditions. She has experienced suicidal thoughts since about age sixteen, and acknowledges three suicide attempts since 2012, including one during the course of the juvenile court proceedings.  She also acknowledges periods of time during the proceedings when she was hearing voices and experiencing split personalities, including thoughts to harm things or to do harm to others.  She has experienced seizures since she was seven, including during these juvenile court proceedings.

The mother also has a long history of substance use (marijuana being her drug of choice, but also methamphetamine and non-prescribed use of her medicines).

consent. The child was placed in the temporary legal custody of DHS for foster care. On October 21, an order confirming the removal was entered.

On December 4, the court entered an order adjudicating the child in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(k) and (n).[3] The adjudication order states:

> The Court has inquired of the parties as to the sufficiency of services being provided and whether additional services are needed to facilitate the safe return of the child to the home and finds the following services shall be or continue to be offered: visits at DHS discretion; [Family Safety, Risk, and Permanency] FSRP services; mental health and substance abuse treatment for mother; substance abuse evaluation for putative father; paternity testing; housing assistance for the mother; transportation assistance for the mother; parenting classes for the mother.

On January 13, 2016, the juvenile court entered a dispositional order, continuing the child in foster care and adopting a case permanency plan, which required the mother to participate in supervised visitation at DHS discretion and participate in Family Safety, Risk, and Permanency (FSRP) services and comply with all FSRP recommendations, as well as participate in substance-abuse therapy and comply with all therapy recommendations. The mother was also required to address her mental-health concerns by participating in therapy and taking her medication as prescribed and working with a domestic-violence advocate in either a group or individual setting. The court wrote:

> 8. The court inquired of the parties as to the sufficiency of services being provided and whether additional services are needed to facilitate the safe return to or maintenance of the child in the home. Based on this inquiry, the Court finds that the mother

---

[3] Defining a CINA as a child "[w]hose parent, guardian, or other custodian for good cause desires to be relieved of the child's care and custody," Iowa Code § 232.2(6)(k), and "[w]hose parent's . . . mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care." *Id.* § 232.2(6)(n).

requests additional visits. DHS is in agreement and is working to facilitate more frequent visits.

9. The Court advises the parties that failure to identify a deficiency in services may preclude the party from challenging the sufficiency of services in a termination of parental rights proceeding.

10. Reasonable efforts *have* been made to eliminate or prevent the need for removal of the child from the home and to finalize any permanency plan in effect and to maintain sibling contact; *these services include* those set forth in State's Exhibit 9, incorporated herein by reference.

Review hearings were held on March 16, May 3, and August 3, 2016. The March 16 review order provided, in part:

8. The court inquired of the parties as to the sufficiency of services being provided and whether additional services are needed to facilitate the safe return to or maintenance of the child in the home. Based on this inquiry, the court finds the following services are being requested and are ordered; continuing housing assistance for the mother; assistance for the mother obtaining adult services; records of mother's hospitalizations since [the child] was born should be obtained; Family Team Meeting.

9. The Court advises the parties that failure to identify a deficiency in services may preclude the party from challenging the sufficiency of services in a termination of parental rights proceeding.

10. Reasonable efforts *have* been made to eliminate or prevent the need for removal of the child from the home and to finalize any permanency plan in effect; *these services include* those set forth in State's Exhibit 17, incorporated herein by reference.

The May 3 order states, in part: "Based on [the court's] inquiry [as to the sufficiency of services], the court finds no additional services are being requested." The court found "[r]easonable efforts *have* been made."

On August 3, the court entered another review order and again found no additional services were being requested and reasonable efforts had been made.

A contested permanency hearing was held on September 28, 2016. At that hearing, the mother testified she was discharged from substance-abuse

inpatient treatment because the program personnel believed she needed to first work on her mental-health condition. She stated her psychiatric medications had been adjusted and she was feeling more stable. She intended to begin therapy in the near future and she was looking for housing. The mother was asked, "Is there anything else you would need as far as services from the State to assist you in that [getting the child returned and being able to provide a safe stable home]?" She stated, "Not as far as I know right now." The juvenile court noted reasonable efforts had been made to achieve reunification. The court also found the statutory time period required a finding that reasonable progress was not being made by the mother, and ordered the permanency goal be changed to termination of parental rights.[4]

---

[4] The court stated on the record:

> [W]e have all been [in] a battle, all of us working together here for the past year to try to get to a point where we can understand whether or not [the mother] can be a full-time mother, full-time parent for this child; in spite of her love for her child and a bond, can she be a parent. And as [the mother] recognized here today, services have been offered and provided and participated in to, I believe those services were designed for this purpose of getting us to a point where we could make that evaluation.
>
> The problem is that we're not at a point a year down the road where we can make that evaluation. We are, because of [the mother]'s ongoing struggles throughout the last year, still at a point where visitations are supervised; that her interactions with her child, although helpful and bonding to both child and mother, are not and have not progressed to a point where we can evaluate true parenting skills.
>
> We have had continued substance abuse. But, more importantly, we have had a continuation of the mental health struggles that [the mother] has suffered with and from throughout much of her life. And we know from how this case began that those struggles really prevent her from being a full-time parent.
>
> And so have we been able to address those issues sufficiently that I can sit here today and say with certainty that given another short period of time, up to six months, that we can be in a position where [the mother] can be a full-time parent. She wants to obtain housing, but has not. She wants to address her substance abuse, to this point has not. She wants to address her mental health, and to this point she has taken

 A petition to terminate the mother's parental rights was filed on September 30, 2016.

A contested permanency review and termination hearing was held on December 1 and 14, 2016. At the December 1 hearing, the mother reported having recently obtained case-management services and that she was scheduled to meet with a domestic-abuse advocate the following week. She reported she was taking her medications as prescribed and was feeling more stable psychologically. She had been seeing her psychiatrist for medication review monthly and attending mental-health therapy. She acknowledged she had used marijuana two weeks prior. She did not yet have housing but believed her case manager would be able to assist her in the search. The mother was scheduled for three visits per week with her child. She testified she had attended three visits since October 2016. She indicated she had transportation problems but stated she was eligible for bus passes and intended to sign up for those. The mother acknowledged she was not capable of providing the child with a home at that time and asked for an additional six months.

---

steps. But, ultimately, we are at a point where she has been many, many times before in her life.

And so I'm not able to make a determination today that further period of time working toward reunification will get us to this child being with her mother full-time within six months.

The other options that are available to me, termination and adoption or guardianship, we have a child that is this young and who is in need of a permanent place to grow up. A guardianship is not the appropriate resolution. The appropriate resolution is through adoption, which requires a termination of parental rights. I am going to direct the county attorney to file that petition, and we'll schedule it for a hearing.

The juvenile court continued the hearing to allow the case manager Sarah Sorensen to testify, which she did on December 14. Sorensen stated she had been working with the mother since late October or early November and was available to help coordinate the mother's many needed services. Sorensen testified that the mother's "big" need was housing—"We worked a little bit on it, but, if anything, that's a problem. It takes a long time. So as soon as any housing could be available at the very soonest is three months, and that's kind of pushing it. Most is six months, from what I see."[5] She stated emergency and short-term temporary housing may be available.

The juvenile court declined to grant the mother additional time and terminated her parental rights pursuant to Iowa Code section 232.116(1)(h) and (k) (2016). The mother appeals.

**II. Scope and Standard of Review.**

We review termination-of-parental-rights proceedings de novo. *See In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We are not bound by the factual findings of the juvenile court, but we give them weight. *See id.* Proof must be clear and convincing. *Id.* Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* (alteration in original) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

---

[5] This time frame was because a child was involved. For people without children looking for housing, the process can take up to two years.

**III. Discussion.**

On appeal, the mother asserts the State did not make reasonable efforts to reunify her with her child. Essentially, she claims that had she received housing assistance in December 2015 and case-management services in March 2016, she would have achieved more stability sooner.

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *Id.*

> If a parent has a complaint regarding services, the parent must make such challenge at the removal, when the case permanency plan is entered, or at later review hearings. Moreover, voicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge.

*In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2002) (internal citation omitted). If the parent does not demand other or different services, the issue is not preserved for our review. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005).

Here, the mother did request additional services earlier in the CINA proceedings. In the March 2016 review order the court noted the mother was requesting "continuing housing assistance" and "assistance for the mother obtaining adult services." But in the May and August review orders, the court noted reasonable efforts were being made and no additional services were requested. In the September permanency hearing the mother testified she

needed no additional services. The mother's claim about a lack of reasonable efforts is thus belied by the record.

The mother also argues the court should have allowed her an additional six months to work toward reunification, termination was not proper under section 232.116(1)(h) because the State had not made reasonable efforts, termination was not proper under section 232.116(1)(k) because her psychiatric conditions were being treated, and termination was not in the child's best interest due to the strong parent-child bond.

When the juvenile court relies on more than one statutory ground, we may affirm the order on any ground supported by clear and convincing evidence. *See D.W.*, 791 N.W.2d at 707. Having already found reasonable efforts to reunify mother and child had been made, there is clear and convincing evidence to support termination pursuant to section 232.116(1)(h) (allowing termination where a child aged three years and younger and adjudicated CINA "has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days," and cannot be returned at present).

We recognize that battling mental-health issues and substance abuse are difficult tasks. But our focus is on the child's best interests, and the legislature "has made a categorical determination that the needs of a child are promoted by termination of parental rights" when the child cannot be returned to the parent's custody within the relevant statutory time period. *See C.B.*, 611 N.W.2d at 494.

By the time of the termination hearing, one-year-old J.P. had been out of the mother's custody for more than twelve months—six months longer than the statutory time period. In order to continue placement for another six months, section 232.104(2)(b) requires a court to find "that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Given the mother's past performance and long history of mental health instability and substance abuse, we are not convinced additional time or alternative services would change her conduct. We agree with the juvenile court that reasonable efforts were made and additional time for reunification was not warranted under the facts of the case.

The mother asserts the bond between her and the child should preclude termination here. "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (quoting *In re D.S.*, 806 N.W.2d 458, 474-75 (Iowa Ct. App. 2011)).

We acknowledge the record indicates the child recognizes and responds to the mother. And while section 232.116(3)(c) allows the juvenile court not to terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship," we are not persuaded this is such a case. The child was fifteen months old at the time of termination hearing and had been out of the mother's care for fourteen of those months.

Finally, the mother contends the juvenile court reached its conclusion based in part on a faulty factual finding. The juvenile court did incorrectly state that the child was placed in a foster home where the family had indicated they were "willing and able to adopt the child." The foster family was not a preadoptive home. However, a report from the foster parents indicated the child

> has been spending time with his potential adoptive family. This is a family we know well and who have known [the child] since he was placed with us. They've provided respite care for him several times and have had regular visits with him. Their visits have gone very well. The family adores him and [the child] is happy when he is with them. They have kids the similar ages as our kids—[the child] seems to really enjoy being with them too. He happily goes to them when they pick him up and we have not had any behavior issues for him when he returns to us.

The slight misstatement by the juvenile court does not affect our conclusion that termination of the mother's parental rights should be affirmed.

**AFFIRMED.**